January Term, 1861.

SAUER
v.
STEINBAUER.

---

| 14 | 70 |
| d89 | 213 |

| 14 | 70 |
| 110 | 4140 |

### SAUER VS. STEINBAUER.

An order of court directing a sale of the property of a judgment debtor, is "legal process" within the meaning of chapter 1, laws of 1855, by which the jurisdiction of the state over a certain piece of land therein described was

ceded to the United States, with a proviso that such cession should not in-
terfere with the service or execution of any legal process.

The sheriff, in executing an order of sale, must sell for cash, and the payment
must be made at once upon acceptance of a bid and demand made for the
money, unless delayed by the act or consent of the parties.

In default of such payment, if the parties do not consent to delay, it is the
sheriff's duty immediately to re-offer the property; and no local custom in
contravention of this rule of law, is valid.

Where the mortgagor is the *sole* defendant, the mortgagee may (under the Rev.
Stat. of 1858) obtain, in the same action, a judgment of foreclosure and for
a sale of the mortgaged premises, and also a personal judgment against the
mortgagor for the deficiency which may remain *due* after applying the pro-
ceeds of the sale.

APPEAL from the Circuit Court for *Milwaukee* County.
*Sauer* obtained a judgment for the foreclosure of a mort-
gage executed by *Steinbauer*, which, after reciting that the
referee had reported that the mortgaged premises could not
be sold in parcels without injury to the interests of the par-
ties, directed the sale of the premises, without stating whether
they should be sold in parcels or otherwise. The sheriff
advertised the premises for sale, and on the day, but before
the hour of sale, the circuit court (after service upon the de-
fendant of a rule to show cause &c.) made an order that the
sheriff should sell the premises in one parcel and that the
judgment of foreclosure be amended accordingly. The
sheriff's report of the sale stated that he sold the property to
one Merrick for $2000, he being the highest bidder, and that
there was still due the plaintiff on the judgment $1238 17,
with interest &c. The confirmation of the sale and report
was opposed by the defendant upon the affidavit of Spang-
enberg, one of his attorneys, and the testimony of the sheriff.
Spangenberg stated that the sale was made within the build-
ing known as the custom house, standing upon the piece of
land described in the act approved January 25, 1855, en-
titled "An act to cede the jurisdiction of the State of Wis-
consin over a certain piece of land therein described, to
the United States;" that at the sale *Steinbauer* bid
$3000 for the premises, and they were struck off to
him by the sheriff; that *Steinbauer* stated to the sheriff
that he would pay the money within the customary
time in such cases, to wit, on the Monday following,

January Term, 1861.

SAUER
v.
STEINBAUER.

when the deed should be prepared; that the sheriff thereupon forthwith offered the premises for sale again, and the same were struck off to Merrick; that said sale was made in the afternoon of Saturday; and that the affiant had been informed and believed that the sales of mortgaged premises in the county of Milwaukee are usually made on Saturday, and that it is customary for the sheriff of said county, in cases where the purchase money is actually to be paid, to hold such sales open until the following Monday, to enable himself to prepare the deed and the purchaser to have the purchase money in readiness. The sheriff testified that when sales were made on Saturday, it was the usual custom not to demand money down, but to let it run until Monday at 2 o'clock; but that when he thought the party was bidding for time, he sometimes demanded the cash on the spot; and that in this case he demanded payment of a part of the purchase money on the day of sale, and upon *Steinbauer* stating that he would pay no part that day, but would pay the whole on Monday, he put the property up again, at the request of the plaintiff's attorney, who notified *Steinbauer* or his attorney, at the time of the sale, that the sale was for cash. The court confirmed the sale and report, and directed judgment to be entered against the defendant for the sum reported to be still due; and from these orders the defendant appealed.

*Hooker & Spangenberg*, for appellant:

1. The amendment of the judgment on the day of sale was a material one (R. S., chap. 145, sec. 8), and the sheriff should have re-advertised the property. Sess. Laws, 1859, chap. 220, sec. 3; *Babcock vs. Perry*, 8 Wis., 277. 2. The act of selling mortgaged premises under a judgment of foreclosure and sale, is not the execution of legal process within the meaning of sec. 1, chap. 1, Laws of 1855. Constitution of Wis., Art. 7, sec. 17; R. S., chap. 136, sec. 1. The Constitution of the U. S. empowers Congress "to exercise exclusive legislation in all cases whatever over all places purchased," &c. (Art. 1, sec. 8, subd. 16); and the right of exclusive legislation carries with it the right of exclusive jurisdiction. 2 Mason, 60, 91; 8 Mass., 72; 1 Met., 580; 17

Pick., 298; 5 Mason, 356. 3. The premises were not sold to the highest bidder; *Steinbauer* was entitled, by the custom of Milwaukee county, to pay on the Monday following the sale. 4. Since the repeal of sec. 77, chap. 84, R. S. 1849, by the revision of 1858, we have no statute authorizing the court, in a foreclosure suit, to enter judgment against the mortgagor for any deficiency.

*Jason Downer*, for respondent :

1. The original judgment authorized the sheriff to sell the whole lot in one parcel, and the additional order directing him to do so did not make it necessary for him to advertise anew. 2. Sec. 2, chap. 1, R. S., and sec. 1, chap. 1, Laws of 1855, contemplate a concurrent jurisdiction of the U. S. and this state, over the lands to which they refer, so far as the execution of the process of courts is concerned. 3. The sheriff was not bound by a sham bid on which the pretended purchaser refused to make any payment at the time.

*By the Court*, DIXON, C. J. The order of the circuit court must be affirmed. For the purpose of executing the judgment, the place where the sale was made was as much within the jurisdiction of the sheriff as any other place within the city or county of Milwaukee. The act of cession declares that it shall in no wise destroy, impair or interfere with the jurisdiction of this state over wrongs, misdemeanors or crimes committed against the laws of this state, within the territory thereby ceded, nor with the service or execution of any legal process. Chapter 1, Laws of 1855. It may be true that the judgment of a court directing the sale of real estate is not a "writ" or "process" within the limited signification of those words as used in the constitution and statutes prescribing "the style of writs and process;" yet we think it would be difficult to maintain that it is not *legal process* according to its ordinary and more enlarged sense. It then signifies the means which may be lawfully used to compel the performance of any act which may become necessary in the progress of the action, or to enforce and carry into effect the judgment or decree of the court. It was in this sense

that it was used by the legislature; and within it, the order of sale, considered as the means by which the judgment is to be executed, is emphatically legal process. It is the instrument provided by law for carrying into execution the judgment which the court has power to pronounce, and the acts to be performed pursuant to its requirements are purely ministerial in their character. We are therefore of opinion that the place of sale furnished no valid objection to the confirmation of the report.

The custom in the city of Milwaukee, of allowing purchasers at sheriff's sales made on Saturday to postpone the payment of the sums bid until the following Monday, and then to pay the money and receive the conveyance, if such custom can be deemed to have been established, affords no ground for setting aside a sale because it was not complied with. Such custom, being in contravention of the rules prescribed by law for conducting such sales, is void. The sheriff has no authority to sell upon credit. He must sell for cash, and the payment must be made at once, unless it be delayed by the act or consent of the parties. Where the parties do not consent to such delay, the purchaser must be prepared to pay upon acceptance of his bid and demand made for the money; and if he does not do so, it is the duty of the sheriff immediately to re-offer the property. The validity of the practice of giving time depended therefore entirely upon the sanction of the parties in each individual case. In the present instance the creditor notified bidders that he would not be bound by it; and if he had not done so, proof of his assent would still have been required. The record contains nothing of the kind. The sale was in this respect regular.

Although we now have no statute directly authorizing the entry of judgment against the mortgagor for any balance of the mortgage debt that may remain unsatisfied after a sale of the premises, still we think that by virtue of sections 29 and 30 of chapter 125 of the Revised Statutes, the order in this case must be sustained. Section 29 specifies seven classes of actions in which it is declared that the plaintiff may unite in the same complaint several causes of action, whether they are such as have heretofore been denominated

legal or equitable, or both. The first class is where the sev- <span style="float:right">June Term, 1861.</span>
eral causes of action arise out of the same transaction, or
transactions connected with the same subject of action. This <span style="float:right">DOTY v. VILLAGE OF MENASHA et al.</span>
case clearly belongs to this class. The barring of the de-
fendant's equity of redemption, after the condition of the
mortgage had been broken, constituted what has heretofore
been denominated an equitable cause of action. His liabil-
ity for the residue of the mortgage debt, after the remedy
under the mortgage had been exhausted, was a cause of ac-
tion purely legal in its nature. Both arose out of the same
transaction. Section 30 provides that the causes of action
so united must all belong to one of the enumerated classes,
and must affect all the parties to the action, and not re-
quire different places of trial, and must be stated sepa-
rately. The causes here stated belong to the same class.
They affect all the parties, the defendant being the mort-
gagor and the party personally liable for the deficiency; and
they do not require different places of trial. Whether, if other
persons, against whom no personal judgment was claimed,
and who therefore would not have been affected by the legal
cause of action, had been made parties defendant for the
purpose of cutting off their equitable interests in the land, a
like order could have been made, it is unnecessary here to
inquire. In *Walton vs. Goodnow* [13 Wis., 661], we held
that a demurrer to a complaint for such a joinder of actions
was not frivolous. And in *Borden vs. Gilbert* [id., 670], we
determined that a guarantor of a promissory note secured
by a mortgage, could not be made a party defendant to an
action to foreclose the mortgage, for the purpose of obtaining
a judgment against him on the guaranty.

Order affirmed.